UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

CODY MAYBERRY,

Plaintiff,

Case No. 24-cv-424-pp

v.

WOLTER, INC.,

Defendant.

---

**ORDER GRANTING JOINT MOTION FOR FINAL APPROVAL OF COLLECTIVE AND CLASS ACTION SETTLEMENT (DKT. NO. 39), GRANTING IN PART PLAINTIFF'S UNOPPOSED MOTION FOR APPROVAL OF SERVICE AWARD (DKT. NO. 41), GRANTING PLAINTIFF'S MOTION FOR APPROVAL OF ATTORNEYS' FEES AND COSTS (DKT. NO. 42) AND DISMISSING CASE WITH PREJUDICE**

---

The plaintiff filed a collective and class action on behalf of himself and similarly situated current and former hourly-paid, non-exempt employees of the defendant. Dkt. No. 1. According to the plaintiff, the defendant failed to include all forms of non-discretionary compensation in employees' regular rates of pay for overtime calculation and compensation purposes. Dkt. No. 1 at ¶2.

In March 2026, the court preliminarily approved the parties' settlement and certified two classes: a collective class under the Fair Labor Standards Act (FLSA) and a Rule 23 class under Wisconsin's Wage Payment and Collection Laws (WWPCL). Dkt. No. 36. The parties filed a joint motion for settlement approval, dkt. no. 39; the plaintiff filed an unopposed motion for approval of

the service award, dkt. no. 41, and an unopposed motion for attorneys' fees and costs, dkt. no. 42.

The court held a hearing on July 20, 2026 to determine whether it should approve the settlement agreement as fair, reasonable and adequate and whether it should enter the proposed final order approving the settlement agreement. Dkt. No. 36 at 4. Following the hearing, the court ordered the named plaintiff to provide supplemental briefing and support for his requested $5,000 service award by July 31, 2026. The plaintiff timely filed a supplemental brief in support of the requested service award, dkt. no. 47, and supporting declarations from Attorney James Walcheske and Cody Mayberry, the named plaintiff and class representative, dkt. nos. 48 and 49.

For the reasons explained below, the court will approve the parties' settlement agreement as fair and reasonable and will approve the plaintiff's request for attorneys' fees and costs. The court also will approve the plaintiff's request for a service award, but will exercise its discretion and reduce the service award to $2,500.

## I. Joint Motion for Settlement Approval (Dkt. No. 39)

Both the FLSA collective action and the Rule 23 class action settlement require judicial approval. The Rule 23 class action settlement also requires a hearing—the court may approve the settlement only after a hearing and on a finding that the settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2). Rule 23(e)(2) requires consideration of the following factors:

> (A) the class representatives and class counsel have adequately represented the class;

> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
> > (i) the costs, risks, and delay of trial and appeal;
> >
> > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> >
> > (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> >
> > (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

The considerations in the rule overlap with the factors articulated by the Seventh Circuit:

> (1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) [the] stage of the proceedings and the amount of discovery completed.

Wong v. Accretive Health, Inc., 773 F.3d 859, 863 (7th Cir. 2014) (citations omitted).

A. Adequacy of Representation – Rule 23(e)(2)(A)

The court previously appointed Cody Mayberry as representative of the collective and Rule 23 classes. Dkt. No. 37 at 2. The court preliminarily certified the following FLSA collective class:

> All individuals who worked for Defendant as non-exempt hourly employees in the State of Wisconsin from November 1, 2022 to November 1, 2024, and who timely returned a Consent to Join the Lawsuit.

Id.

The court preliminarily certified the following Rule 23 class:

> All individuals who worked for Defendant as non-exempt hourly employees in the State of Wisconsin from November 1, 2022 to November 1, 2024, and who do not file an exclusion from the class or otherwise "opt-out" from the Lawsuit.

Id.

The court appointed Mayberry to serve as the representative for the certified collective class, and it is not aware of any conflicting interests between Mayberry and the other class members. See Dkt. No. 44 at ¶35 (attesting the absence of any conflict of interest). There is no evidence in the record that class counsel—David Potteiger, James Walcheske, Ben James Slatky and Scott Luzi of the law firm of Walcheske & Luzi—have not adequately represented the class during the litigation. With respect to the first factor, the court is satisfied that the class is adequately represented.

B. Arm's-Length Negotiations and Non-Collusiveness of Settlement Process—Rule 23(e)(2)(B) and the Seventh Circuit's First Factor

The Seventh Circuit has emphasized that the "most important factor relevant to the fairness of a class action settlement is the strength of plaintiff's case on the merits balanced against the amount offered in the settlement." Wong, 773 F.3d at 863.

The parties have identified a genuine dispute about liability: whether the defendant's alleged time shaving practices resulted in unpaid compensable time and whether the defendant failed to factor certain compensation into the regular rate of pay for overtime calculation and compensation purposes. Dkt.

No. 39 at 6-7. The parties also disagreed over the extent of damages, if any, and whether any alleged violations by the defendant were willful.

The parties reached the settlement agreement after eleven months of discovery and after engaging in "arms-length negotiations toward a resolution." Id. at 7. In support of the parties' joint motion for preliminary approval of their settlement agreement, class counsel discussed the strength of the plaintiff's claims and the defendant's defenses, as well as the monetary and non-monetary terms of settlement and procedures. See Dkt. 35 at ¶¶10-15. The court is satisfied that the parties negotiated at arm's length and in good faith, balancing the strength of the plaintiff's case on the merits against the amount offered in settlement. This factor weighs in favor of approving the settlement.

C. Adequacy of the Relief Provided by the Settlement—Rule 23(e)(2)(C) and the Seventh Circuit's Second and Sixth Factors

When considering the adequacy of relief, Rule 23(e)(2) instructs the court to take into consideration the (1) costs, risks and delay of trial and appeal, (2) the effectiveness of the proposed method of distribution, (3) the terms of any proposed award and (4) the agreements made in connection with the settlement. Fed. R. Civ. P. 23(e)(2). Similarly, the Seventh Circuit looks to the complexity, length and expense of further litigation, the stage of the proceedings and the amount of discovery completed. Wong, 773 F.3d at 863.

The settlement agreement provides for a gross settlement of $190,000, which includes: (1) $121,216.67 for alleged unpaid overtime of the class members, (2) $63,783.33 in attorneys' fees and costs to class counsel and (3) $5,000.00 as a service award to the representative plaintiff. Dkt. No. 34-1 at 8–

9. Each settlement class member will receive a proportionate share of the fund. Id. at 10. Under the terms of the settlement agreement, the amount recoverable by a class member is dependent upon the individual's number of eligible work weeks, level of participation in the case (Rule 23 class member and/or collective class member) and the overall participation by class members, with unclaimed amounts to revert to the defendant. Id. at 10.

1. *The Costs, Risks, and Delay of Trial and Appeal—Rule 23(e)(2)(C)(i)*

This case has been pending for a little over two years. The parties informally exchanged information; the defendant provided timekeeping data, additional compensation information and information concerning members of the putative class members. Dkt. No. 35 at ¶¶5–6. The parties acknowledge that this case would have required continued time, effort, expense and risk had litigation continued. Dkt. No. 39 at 8. Before this case could go to trial, there likely would have been additional discovery and motion practice for both class certification and summary judgment. Id.

2. *The Effectiveness of Any Proposed Method of Distributing Relief to the Class, Including the Method of Processing Class-Member Claims—Rule 23(e)(2)(C)(ii)*

The parties' settlement agreement provides a reasonably effective method of distribution of the settlement fund to class members. There are 690 individuals who are Rule 23 class members and forty-nine individuals who opted in to the FLSA collective class (including the named plaintiff). Dkt. No. 39 at 2; Dkt. No. 44 at ¶¶29–32. The settlement agreement outlines the method of distributing checks to the class members. Settlement checks will be mailed to

class members via First Class U.S. mail within thirty days following the "Effective Date" of the settlement agreement, defined as the thirtieth day following entry of the court's final approval order, absent any appeals. See Dkt. No. 34-1 at 2, 5, 10. The mailed settlement checks will expire 120 days after issuance. Id. at 2, 8. If a class member reports a settlement check lost or destroyed, the defendant will stop payment on the original check and reissue a new check, which will expire 120 days after reissue. Id. at 8.

3. *The Terms of any Proposed Award of Attorneys' Fees, Including Timing of Payment—Rule 23(e)(2)(C)(iii)*

The settlement agreement provides for the payment of $63,333.33 in attorneys' fees and $450 in costs. Dkt. No. 34-1 at 9. The amount of attorneys' fees is based on a one-third contingent fee of the $190,000 gross settlement fund. The settlement agreement provides that the attorneys' fees (and the service award, if the court approves it) will be distributed within twenty days after the settlement agreement's effective date. Dkt. No. 34-1 at 10. As the court will discuss below, the amount of attorneys' fees and costs is fair and reasonable.

4. *Any Agreement Required to Be Identified Under Rule 23(e)(3)—Rule 23(e)(2)(C)(iv)*

The parties have not identified any agreement other than the settlement agreement itself that must be considered under Rule 23(e)(3).

In consideration of the foregoing, the adequacy of relief weighs in favor of approving the agreement.

D. Equitable Treatment of Class Members—Rule 23(e)(2)(D)

All class members are entitled to a *pro rata* share and will receive the same treatment. This factor weighs in favor of approving the agreement.

E. The Amount of Opposition to the Settlement—the Seventh Circuit's Third and Fourth Factors

The court is not aware of any opposition to the settlement. The plaintiff's counsel attests that only one individual requested exclusion from the settlement and that no one objected to the settlement. See Dkt. No. 40 at ¶14; Dkt. No. 44 at ¶32. Counsel also did not receive any response or objection after notifying the United States Attorney General, the Wisconsin Department of Workforce Development or the attorneys general of the states in which class members reside. Dkt. No. 44 at ¶¶27–28. This factor weighs in favor of approving the agreement.

F. The Opinion of Competent Counsel—The Seventh Circuit's Fifth Factor

Counsel for both parties agree that the settlement agreement is fair, reasonable and adequate. Dkt. No. 39 at 10; Dkt. No. 34-1 at 2. Attorney Walcheske filed a declaration regarding the adequacy of the settlement and the reasonableness of class counsel's fees. Attorney Walcheske indicates his belief that the settlement is "an excellent result" for the class and that class members "are receiving amounts representative of their amounts (allegedly) owed." Dkt. No. 44 at ¶25. This factor, too, weighs in favor of settlement.

G. Final Approval

After reviewing the settlement agreement, hearing from counsel at the July 20, 2026 hearing and considering all the above factors, the court will grant the parties' joint motion for approval of settlement.

## II. Plaintiff's Motion for Approval of Service Award (Dkt. No. 41)

The plaintiff requests a service award of $5,000. Dkt. No. 41. "In examining the reasonableness of a requested service award, courts consider: (1) the actions the plaintiffs have taken to protect the interests of the class, (2) the degree to which the class has benefited from those actions, and (3) the amount of time and effort the plaintiff expended in pursuing the litigation." Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1998). The amount of the service award is within the court's discretion. See Camp Drug Store, Inc. v. Cochran Wholesale Pharm., Inc., 897 F.3d 825, 834 (7th Cir. 2018). And it is within the court's discretion to adjust the service award if warranted. See id. at 834-35 (affirming court's reduction of service award from $15,000 to $1,000).

Following the July 20 hearing, the plaintiff filed a supplemental brief and two declarations in support of the requested $5,000 service award. Mayberry, the representative plaintiff, attests in his declaration that he contacted class counsel's firm about his concerns regarding how his employment with the defendant ended. Dkt. No. 48 at ¶4. Mayberry says that he provided documents to his attorneys, including earnings statements and copies of communications he had with the defendant's representatives. Id. at ¶5. He states that he provided documents to his attorneys about bonuses he had received. Id. He

says that he provided additional documents to his attorneys to investigate potential time-shaving claims that were in addition to the unpaid overtime claims.[1] Id. at ¶11. Mayberry states that while he does "not know or have a record of the number of hours [he] spent on the case," he stayed informed throughout the litigation. See id. at ¶¶11, 16. He states that he "authorized [his] attorneys to resolve the case on terms that we agreed were reasonable for everyone who would be impacted by them." Id. at ¶12. Mayberry further attests that he accepted the risks of being the representative plaintiff in the case because he "felt and still feel like it was the right thing to do and that we were able to get people money that they were owed." Id. at ¶15.

The plaintiff argues that the reasonableness of the award "can only be derived from a comparison of the amount requested in light of the name plaintiff's service provided, risks assumed, and results obtained, to awards approved in similar cases under similar circumstances." Dkt. No. 47 at 7. He asserts that a $5,000 service award is appropriate because it is within the range of other recent awards approved by courts in this district under similar circumstances. Dkt. No. 41 at ¶7 (citing Esquibel v. Legacy Flexo Corp., Case No. 24-cv-1000-BBC, Dkt. No. 32 (E.D. Wis. Mar. 25, 2026) ($5,000); Bohnert v. RB Royal Indus., Inc., Case No. 23-cv-141-PP, Dkt. No. 49 (E.D. Wis. Feb. 26, 2025) ($5,000); Blanks-Austin v. Clarity Care, Inc., Case No. 22-cv-1553-WCG, Dkt. No. 42 (E.D. Wis. Feb. 7, 2025) ($7,500); Hunt v. Greif, Inc., *et al.*,

[1] The plaintiff did not assert any time-shaving claims in the complaint. See Dkt. No. 1 at ¶1.

Case No. 22-cv-980-BHL, Dkt. No. 50 (E.D. Wis. July 17, 2024) ($5,000); Hoffman v. Inland Flexo, LLC, Case No. 23-cv-103-WCG, Dkt. No. 31 (E.D. Wis. May 31, 2024) ($7,500); McWilliams v. Skana Aluminum Co., Case No. 22-cv-1179-WCG, Dkt. No. 47 (E.D. Wis. Apr. 5, 2024) ($7,500); Harrison v. Sunny Ridge Nursing & Rehab. Center LLC, Case No. 20-cv-197-PP, Dkt. No. 51 (E.D. Wis. Mar. 16, 2022) ($5,000)); see also Dkt. No. 47 at 16-17. The plaintiff maintains that "so long as the requested service award and the surrounding circumstances compare favorably to service awards approved in similar litigation with similar circumstances, there should be no clear reason to withhold approval of the requested service award absent extenuating circumstances." Dkt. No. 47 at 7. The plaintiff argues that placing greater weight on the amount of time the named plaintiff devoted to the litigation would incentivize a plaintiff to prolong the litigation to justify a larger service award. See id. at 10-12.

The court does not find persuasive the plaintiff's argument that the requested $5,000 service award is reasonable because it is within the range of awards approved in other cases under similar circumstances. The Seventh Circuit has recognized that service awards "are designed to compensate named plaintiffs for the costs incurred in performing their role as class representatives—costs above and beyond what they would bear as ordinary class members." Scott v. Dart, 99 F.4th 1076, 1082-83 (7th Cir. 2024). In some circumstances, such as an employment class action like this one, service awards "*may* also recognize the added risks of retaliation or stigmatization that

named plaintiffs assume in participating in a lawsuit against their current or former employers." Id. at 1083 (emphasis added). But though the named plaintiff's services, even if they are minimal, will justify an award, see id., the amount of the award must be reasonably connected to the actual contributions made by the named plaintiff and the risks the plaintiff accepted as the class representative. See Hoppe v. R.R. Donnelley & Sons Company, Case No. 25-cv-839, 2026 WL 1898730, at *3 (E.D. Wis. June 30, 2026) (Conway, J.) ("The service award must be tethered to the actual service the plaintiff performed and risks incurred.").

The cases that the plaintiff argues are comparable lend some support to his request for a $5,000 service award. Service awards in other cases can provide a useful guidepost for assessing the reasonableness of the requested amount of an award, but overreliance on basing a reasonableness determination on other approved service awards can obscure the purpose of the award: recognizing the named plaintiff's actual contributions to the overall class. See id. at *5 (in which Judge Conway explained that service awards in other cases must be "viewed with caution" because "fixing any sort of standard service award" "can quickly lead to a snowball effect whereby courts approve slightly larger and larger numbers based on the premise that they are close to figures approved by preceding courts").

An examination of the cases highlighted by the plaintiff and other cases class counsel has appeared in (illustrated by the chart below) reinforces Judge

Conway's justified caution against an overreliance on service awards approved in other cases.[2] See id.

| Case Name | Gross Settlement Amount | Service Award |
|---|---|---|
| Lee v. UL LLC | $1,620,000 | $20,000 |
| Solem v. McCain Foods USA, Inc. | $1,424,855 | $20,000 |
| Smith v. HellermannTyton Corp. | $1,376,810 | $10,000 |
| Newman v. Luvata Appleton LLC | $1,069,775.82 | $20,000 |
| Mitchell v. Trilliant Food and Nutrition, LLC | $1,000,000 | $15,000 |
| Cooper v. OS Restaurant Servs., LLC et al | $990,000 | $10,000 |
| Ciha v. Masters Gallery Foods Inc. | $785,823.90 | $15,000 |
| Kolbow, et al. v. API Heat Transfer Inc. et al | $500,000 | $11,000 |
| Stirmel v. S&C Elec. Co. | $350,000 | $20,000 |
| Hoffman v. Inland Flexo, LLC | $205,000 | $7,500 |
| Blanks-Austin v. Clarity Care, Inc. | $165,000 | $7,500 |
| McWilliams v. Skana Aluminum Co. | $152,000 | $7,500 |
| Hunt v. Greif, Inc., et al. | $150,000 | $5,000 |
| Harrison v. Sunny Ridge Nursing & Rehab. Center LLC | $138,000 | $5,000 |
| Esquibel v. Legacy Flexo Corp. | $115,000 | $5,000 |
| Bohnert v. RB Royal Indus., Inc. | $45,000 | $5,000 |
| Sanders v. Mid-City Foundry Co. | $39,845.25 | $10,000 |

In each of these cases, class counsel attests that the named plaintiff's contributions were substantially similar—*i.e.*, minimal. See Dkt. No. 49 at ¶¶12-15; see also Bernstein v. Superior Air-Ground Ambulance Serv. of Wis.,

[2] The amounts referenced in the chart are taken from the settlement agreements approved in each case. See Lee, Case No. 17-cv-1617, Dkt. No. 55-1 (E.D. Wis.); Stirmel, Case No. 20-cv-347, Dkt. No. 16-1 (E.D. Wis.); Cooper, Case No. 20-cv-240, Dkt. No. 21-1 (E.D. Wis.); Mitchell, Case No. 19-cv-147, Dkt. No. 172-1 (E.D. Wis.); Newman, Case No. 22-cv-942, Dkt. No. 25-1 (E.D. Wis.); Solem, Case No. 22-cv-137, Dkt. No. 30-1 (E.D. Wis.); Smith, Case No. 19-cv-1262, Dkt. No. 93-1 (E.D. Wis.); Kolbow, Case No. 22-cv-451, Dkt. No. 23-1 (E.D. Wis.); Ciha, Case No. 21-cv-1405, Dkt. No. 26 (E.D. Wis.); Sanders, Case No. 23-cv-318, Dkt. No. 28-1 (E.D. Wis.); Esquibel, Case No. 24-cv-1000, Dkt. No. 19-1; Bohnert, Case No. 23-cv-141, Dkt. No. 34-1; Blanks-Austin, Case No. 22-cv-1553, Dkt. No. 28-1; Hunt, Case No. 22-cv-980, Dkt. No. 37-1; Hoffman, Case No. 23-cv-103, Dkt. No. 18-1; McWilliams, Case No. 22-cv-1179, Dkt. No. 31; Harrison, Case No. 20-cv-197, Dkt. No. 35-1.

Inc., Case No. 24-cv-892, Dkt. Nos. 42 at 13-14 & 47 at ¶¶34-35 (E.D. Wis.). But comparing the service awards approved in other cases does not meaningfully help explain why a $5,000 service award in *this particular case* is reasonable. For instance, the named plaintiffs in Blanks-Austin and McWilliams were awarded $7,500 for similarly minimal contributions while the gross settlement amounts in both cases were less than the $190,000 gross settlement amount in this case. Why did those named plaintiffs receive a $7,500 award for comparably minimal contributions, more than the $5,000 service award that Mayberry requests? Why did the named plaintiffs in Lee and Cooper receive a $20,000 service award when the gross settlement amounts ($1,620,000 vs. $350,000) were substantially different? The $10,000 service award in Sanders is particularly curious given the gross settlement of only $39,845.25. Why was the named plaintiff in Sanders deserving of a $10,000 service award on a gross settlement of less than $40,000, while the named plaintiff in Bohnert was deserving of only a $5,000 award on a larger gross settlement of $45,000?

One would expect that the service award for comparably minimal contributions by the named plaintiff would result in roughly similar service awards regardless of the size of the gross settlement amount achieved. As Judge Conway has reasoned, was the size of the service award tethered to the size of the gross settlement amount, the service award would be more like a bounty rather than an award to recognize the named plaintiff's service to the class. See Hoppe, 2026 WL 1898730, at *6 ("A representative plaintiff's service

award . . . is not intended to be akin to whistleblower's bounty in a qui tam action." (citing Altnor v. Preferred Freezer Servs., Inc., 197 F. Supp. 3d 746, 772 (E.D. Pa. 2016)). So—relying on service awards approved in other cases to determine reasonableness is too myopic to fairly and meaningfully assess what award would appropriately recognize and compensate the named plaintiff's actual contributions to the class.

The plaintiff's argument that a $5,000 service award is reasonable because the defendant approved it and no class members objected to the settlement is not compelling. Dkt. No. 47 at 18-19. The defendant agreed to pay a lump sum amount of $190,000. To the defendant, it matters little how the pie gets divided among class counsel, the named plaintiff and the class members. More important to the defendant is an end to the litigation for an amount the defendant is willing to accept as a tradeoff for the risks and costs of further litigation.

It is unsurprising that no class members objected to the settlement based on the requested $5,000 service award. Under the settlement agreement's terms, the amount recoverable by a class member is dependent upon that individual's number of eligible work weeks, level of participation in the case and the overall participation by class members. With a $5,000 service award and $63,783.33 allocated for attorneys' fees and costs, the 691 class members each would receive about $179 from the remaining net fund if it were distributed on a *pro rata* basis. Reducing the service award to $2,500 and reallocating $2,500 to the net fund would increase each class member's *pro*

*rata* share to only $182. Such a small difference ($3) likely would discourage any individual class member from investing the requisite time and effort to file an objection to the settlement agreement. See Dkt. No. 34-1 at 23-24 (explaining how to object to the settlement).

Mayberry should receive an award for his service to the class. The court commends his motivation to "do the right thing" for the benefit of others similarly situated. But the services that Mayberry performed in this case and the risks he incurred as the representative of the class do not support a $5,000 service award. Mayberry's efforts and time devoted to the litigation have been minimal. He collected documents and communications requested by his attorneys to support the unpaid overtime claims asserted in the complaint. See Dkt. No. 1 at ¶1; Dkt. No. 48 at ¶¶10-11. He has not been deposed and it does not appear that the defendant ever requested to take his deposition. Although the court recognizes the risk the named plaintiff accepted as the "face" of the litigation, he was a former employee of the defendant and so did not face the risk of retaliation. Where the named plaintiff's services have been minimal, the court finds that a $2,500 service award is reasonable. See Hoppe, 2026 WL 1898730, at *3 ("[W]hen a case settles with minimal involvement from the representative plaintiff, the service award will likewise be minimal.").

The court will approve the plaintiff's request for a service award, but will exercise its discretion to reduce the amount of the requested service award to $2,500. Per the terms of the settlement agreement, the $2,500 reduction of the

requested service award will be reallocated to the net fund to be distributed to the class members. <u>See</u> Dkt. No. 34-1 at 9-10 (paragraph 3.3(B)).

## III. Plaintiff's Motion for Attorneys' Fees and Costs (Dkt. No. 42)

Class counsel asks the court to approve attorneys' fees and costs in the total amount of $63,783.33 as contemplated by the settlement agreement. Dkt. No. 42.

Class counsel states that at the outset of the litigation, counsel agreed with the plaintiff to be solely responsible for their fees and costs in the event of an adverse result. In exchange, the plaintiff agreed to the greater of either a 40% contingency fee arrangement, exclusive of costs, or the actual fees and costs recovered through judgment or a negotiated settlement. Dkt. No. 44 at ¶10. Class counsel now seek approval of their fees at a reduced one-third rate of the $190,000 gross settlement amount, which amounts to $63,333.33 in fees. Dkt. No. 42 at ¶3.

Under the FLSA, a plaintiff may seek reimbursement for fees and costs. 29 U.S.C. §216(b). In addition, successful litigants may seek fees and costs under Wis. Stat. §109.03(6).

In awarding attorneys' fees, courts have discretion to use either a percentage of the fund or lodestar methodology. <u>Florin v. Nationsbank of Georgia, N.A.</u>, 34 F.3d 560, 566 (7th Cir. 1994). The Seventh Circuit instructs courts to "do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." <u>In re Synthroid Mktg. Litig.</u>, 264 F.3d 712, 718 (7th Cir.

2001) ("Synthroid I"). Relevant evidence of the market rate includes "actual fee contracts that were privately negotiated for similar litigation, information from other cases, and data from class-counsel auctions." Williams v. Rohm and Haas Pension Plan, 658 F.3d 629, 635–36 (7th Cir. 2011). Information from other cases includes the percentage of recovery approved by other courts. See In re Broiler Chicken Antitrust Litig., 142 F.4th 568, 573 (7th Cir. 2025).

The Seventh Circuit previously addressed contingency fee awards in class actions, observing that "[o]ne advantage of the contingent fee is that the client (or the judge as protector of the class's interests) need not monitor how many hours the lawyers prudently devoted to the case. The client cares about the outcome alone." In re Synthroid Mktg. Litig., 325 F.3d 974, 979 (7th Cir. 2003) ("Synthroid II"). Courts in this district routinely have approved a one-third contingent fee in class actions, finding such a percentage rate to be fair and reasonable. See, *e.g.*, Esquibel, Case No. 24-cv-1000-BBC, Dkt. No. 32 (approving class counsel request for one-third contingent fee); Hess v. MedTorque, Inc., Case No. 24-cv-473-LA, Dkt. No. 30 (E.D. Wis. Mar. 2, 2026) (same); Spettel v. Poly Vinyl Co., Inc., Case No. 23-cv-1681-JPS, Dkt. No. 33 (Jan. 20, 2026) (same); Blanks-Austin, Case No. 22-cv-1553-WCG, Dkt. No. 42 (same); Ciha, Case No. 21-cv-1405-SCD, Dkt. No. 39 (E.D. Wis. Oct. 30, 2023); Borden v. Encore Senior Living, LLC, et al., Case No. 22-cv-707-SCD, Dkt. No. 36 (E.D. Wis. Oct. 30, 2023) (same); Schneider v. Copperleaf Mgmt. Grp. Inc., Case No. 22-cv-1161-BHL, Dkt. No. 43 (E.D. Wis. June 28, 2023) (same).

A review of the docket reveals that class counsel appears to have devoted substantial time and effort to litigating the plaintiff's claims. Class counsel filed a number of documents over the course of the litigation, including the complaint and disclosure statement, a motion to stay, a motion for protective order, five status reports, a stipulation for class and collective certification, a joint motion for preliminary settlement approval and supporting brief and the current motions and supporting briefs. Counsel also attended the October 1, 2024 scheduling conference and the July 20, 2026 fairness hearing. Class counsel attest to their efforts to advance the plaintiff's legal theories and causes of action, develop the factual narrative and exchange information and documentation with opposing counsel. See Dkt. 44 at ¶18. Just as important is the fact that class counsel successfully negotiated a settlement that will ultimately benefit the class.

Under these circumstances, a one-third percentage fee of the gross settlement amount is fair and reasonable. Class counsel's request for $450 in costs is reasonable as well. The court will approve the unopposed award of fees and costs.

## IV. Conclusion

The court **GRANTS** the joint motion for approval of settlement. Dkt. No. 39. The court **APPROVES** the settlement as fair, reasonable, and adequate under Rule 23(e) of the Federal Rules of Civil Procedure.

The court **APPROVES** the settlement payments to the settlement class. The defendant must direct its designated third-party administrator to mail the

settlement checks to the settlement class via First Class U.S. Mail within the period proscribed in the settlement agreement. See Dkt. 34-1 at 7. The settlement class members each have 120 days to cash their checks. If any settlement check is not cashed within the time allotted, the amounts will revert to the defendant. Any settlement class member who cashes their settlement check is bound by the settlement.

The court **GRANTS IN PART** the plaintiff's unopposed motion for approval of the named plaintiff's service award. Dkt. No. 41. The court **ORDERS** that the requested $5,000 service award to the named plaintiff is **REDUCED** to $2,500.

The court **GRANTS** the plaintiff's unopposed motion for approval of attorneys' fees and costs. Dkt. No. 42. The court **APPROVES** the requested attorneys' fees and costs in the amount of $63,783.33.

The court **ORDERS** that this case is **DISMISSED WITH PREJUDICE**. The clerk will enter judgment accordingly.

Dated in Milwaukee, Wisconsin this 26th day of October, 2026.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**